## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BRANCH BANKING AND     :
TRUST COMPANY,     :
     :
    Plaintiff,     :
     :   CIVIL ACTION NO.
    v.     :   1:15-CV-02034-RWS
     :
JULIUS T. MORGAN,     :
     :
    Defendant.     :

## ORDER

This case comes before the Court on Plaintiff'S Motion for Summary

Judgment [24].  After a review of the record, the Court enters the following

Order.

## Background

This case arises out of a loan made by Branch Banking and Trust

Company ("BB&T" or "Plaintiff") to Julius T. Morgan ("Plaintiff") on March

11, 2008, with an original principal amount of $1,643,624.83.  (Pl.'s Statement

of Undisputed Material Facts ("SOMF"), Dkt. [24-1] ¶ 1.)  Defendant signed a

promissory note and executed a security deed and security agreement granting

Plaintiff a security interest in certain real property.  (Id. ¶ 2.)  Under the terms

of the promissory note, Defendant was to make 35 monthly payments of $11,857.69 with a final payment due of all remaining principal and accrued interest on March 10, 2011.  (Aff. of Trisha Wixson ("Aff."), Ex. A, Dkt. [27], at 5.)  Defendant made these payments through December 16, 2010.  (Aff., Ex. G, Dkt. [24-2], at 92.)

On January 10, 2011, Defendant executed the Forbearance Agreement. (Aff., Ex. C, Dkt. [27], at 19–26.)  Under its terms, Defendant was to make current the interest due and then continue to make monthly interest-only payments with a final payment of all principal, accrued interest, bank fees, costs, and expenses due by June 10, 2011.  (Id. ¶¶ 5(a)–5(d), at 20–21.)  On July 7, 2011, Plaintiff and Defendant executed the First Amendment to Forbearance Agreement extending the final payment date to September 10, 2011.  (Aff., Ex. D, Dkt. [27], at 28–29.)  Defendant made monthly interest-only payments through August 8, 2011.  (Aff., Ex. G., Dkt. [24-2], at 87.)  He failed to make the final payment of all outstanding balances by the September 10, 2011 final payment date.  (Id. at 86.)

Plaintiff sent to Defendant a letter, dated November 7, 2011, informing Defendant that due to his failure to make the final payment, Plaintiff intended

2

to hold a foreclosure proceeding to sell the property for which Plaintiff held a security deed. (Aff., Ex. E, Dkt. [27], at 31–34.) A foreclosure sale was held on at the Bibb County Courthouse on December 6, 2011. (SOMF, Dkt. [24-1] ¶ 18.) A Final Order Confirming Foreclosure Sale was entered by the Superior Court of Bibb County on July 10, 2013, confirming the sale for $1,300,000.00. (Aff., Ex. F, Dkt. [27], at 36–38)

Plaintiff filed a deficiency action against Defendant in the Superior Court of Newton County. (SOMF, Dkt. [24-1] ¶ 26.) The Superior Court denied summary judgment on all issues. (Id. ¶ 27.) Plaintiff subsequently voluntarily dismissed the previous litigation and filed this suit. (Id. ¶ 28.)

## Discussion

## I.    Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

3

if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  <u>Id.</u> at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  <u>Id.</u>  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 249–50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  <u>Patton v. Triad Guar. Ins. Corp.</u>, 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences that are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

4

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations

omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met

its burden under Rule 56(a), the nonmoving party "must do more than simply

show there is some metaphysical doubt as to the material facts").

## II.     Discussion

Plaintiff seeks to recover the outstanding principal balance of

$221,633.78, interest of $113,405.94, and costs and fees of $23,558.96.  It also

seeks to recover ongoing interest of $52.330198 per day for each day after June

10, 2016, through the date of judgment.  Finally, Plaintiff seeks to recover

statutory attorney's fees pursuant to O.C.G.A. § 13-1-11.

### A.     Liability

"[A] plaintiff seeking to enforce a promissory note establishes a prima

facie case by producing the note and showing it was executed.  Once that prima

facie case has been made, the plaintiff is entitled to judgment as a matter of law

unless the defendant can establish a defense." Shropshire v. Alostar Bank of

_Commerce_, 724 S.E.2d 33, 38–39 (Ga. Ct. App. 2012) (quoting _Core LaVista,_

_LLC v. Cumming_, 709 S.E.2d 336, 340 (Ga. Ct. App. 2011)).  Plaintiff has here

produced the note at issue, which bears the signature of Defendant.  (Aff., Ex.

A, Dkt. [27], at 5–8.)  Defendant has admitted that he signed the note.  (Dep. of

Julius T. Morgan, Dkt. [28], at 14 ln.1–12.)  Defendant has also admitted that

he stopped paying the note (id. at 26 ln.16–21), which also satisfies Plaintiff's

burden of proving its _prima facie_ case.  See _FAS Capital, LLC v. Carr_, 7 F.

Supp. 3d 1259, 1262 (N.D. Ga. 2014) ("A debtor's admission of default

establishes his creditor's prima facie case for recovery.")  Since Plaintiff has

provided evidence to prove its _prima facie_ case, the burden now shifts to

Defendant to establish a defense.

Defendant raises the defense of waiver in his brief.  (Br. in Opp'n to Pl.'s

Mot. for Summ. J., Dkt. [29], at 10–12.)  This affirmative defense, however,

was not raised prior to this brief.  It does not appear in Defendant's Affirmative

Defense and Answer [10].  Defendant has therefore waived this defense.

_Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC_ 684 F.3d 1211, 1221–22

(11th Cir. 2012); see also _Keybank Nat'l Ass'n v. Hamrick_, 576 F. App'x 884,

888 (11th Cir. 2014) (holding defendant waived its affirmative defense by

failing to raise it prior to the summary judgment motion).  Since Defendant

argues no other defense to Plaintiff's *prima facie* case, Defendant has failed to

meet his burden.  Plaintiff's Motion for Summary Judgment [24] is therefore

**GRANTED**.

### B.   Damages

Since Defendant's liability has been established, the Court must now

decide whether Plaintiff has presented sufficient evidence from which the

amount of damages owed may be determined on a motion for summary

judgment.  Plaintiff relies on three main sources of evidence in its calculation

of damages: the affidavit of Trisha Wixson ("Wixson Affidavit"), a loan

history, and a loan calculator.  Defendant contests the admissibility of all three

as well as arguing that they do not prove substantively the amount of damages

owed.  The Court first addresses the admissibility of Plaintiff's evidence before

turning to the amount of damages owed.

### 1.   *Admissibility of Evidence*

Defendant first argues that the Wixson Affidavit is inadmissible because

it is not based on the affiant's personal knowledge as required by Rule

56(c)(4).  The Wixson Affidavit states that it is based on "facts that are

7

personally known to me to be true and correct." (Aff., Dkt. [24-2] ¶ 1, at 28.)
As an Asset Manager with the BB&T Business Loan Recovery Department,
she is familiar with the files maintained by Plaintiff. (Id. ¶ 2, at 29.)  As the
custodian of BB&T's records with reference to this case, she has knowledge of
how they were prepared and maintained.  (Id.)  The Wixson Affidavit is
therefore admissible and may be relied upon by the Court at summary
judgment.  See, e.g., Wells Fargo Bank, N.A. v. SFPD II, LLC, No. 1:11-cv-
04001-JEC, 2013 WL 541410, at *4–5 (N.D. Ga. Feb. 12, 2013) (relying on an
affidavit filed by plaintiff's senior vice president, along with the attached
documents, to prove damages at summary judgment).

Defendant next contests the admissibility of two of the documents relied
upon by Wixston in her affidavit.  As to the loan history, the Court finds that it
is admissible under rule 803(6) and thus may be relied upon in ruling on
Plaintiff's Motion for Summary Judgment.  For a business record to be
admitted into evidence, Rule 803(6) requires:

> (A) the record was made at or near the time by—or from
> information transmitted by—someone with knowledge; (B) the
> record was kept in the course of a regularly conducted activity of a
> business, organization, occupation, or calling, whether or not for
> profit; (C) making the record was a regular practice of that

> activity; (D) all these conditions are shown by the testimony of the
> custodian or another qualified witness . . .; and (E) the opponent
> does not show that the source of information or the method or
> circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  Plaintiff has met all of these requirements for the loan
history.  The loan history is "a contemporaneous detail of BB&T's internal
accounting."  (Aff., Dkt. [24-2] ¶ 29, at 36.)  This record, made at the time of
the events recorded in the ordinary course of business, satisfies the
requirements of Rule 803(6) through the affidavit of Wixson, who is "the
custodian/keeper of records for BB&T with respect to this matter."  (Id. ¶ 2, at
29.)  It therefore falls to Defendant to show a lack of trustworthiness for the
loan history to be inadmissible.

Defendant first argues that the loan history is untrustworthy because it is
inconsistent with the damages currently claimed by Plaintiff.  For example,
according to the loan history, the principal balance on the loan is $0.00, not the
$211,633.78 claimed here.  (Aff., Ex. G, Dkt. [24-2], at 86.)  These
inconsistencies, however, are explained in the Wixson Affidavit.  The loan
history is a document of BB&T's internal accounting, and it does not
necessarily reflect the amounts actually owed.  Following standards set forth by

the Financial Accounting Standards Board, a private organization designated by the SEC to set accounting standards for public companies, BB&T charged off the principal remaining after application of foreclosure proceeds. (Aff., Dkt. [24-2] ¶¶ 29.x, 29.xvii, at 40, 43.) Internal accounting procedures following accounting standards similarly explain why the loan history fails to show interest accruing after the loan was placed on non-accrual status. (Id. ¶¶ 29.ix–29.xiii, at 39–41.)

Defendant next argues that the loan history is untrustworthy because the fees and charges listed are not supported by the underlying loan documents. The Wixson Affidavit, however, explains each of these fees and charges. (See, e.g., id. ¶ 29.iv, at 37–38; see also id. Aff., Ex. A, Dkt. [27], at 7 (discussing applicable charges and fees under the note)). The Court finds that Defendant has failed to meet his burden in proving the untrustworthiness of the loan history. It is therefore admissible and may be relied upon in ruling on this motion for summary judgment.

Finally, Defendant argues that the loan calculator is inadmissible because it was generated solely to prove damages in anticipation of litigation and lacks underlying business records to substantiate the amounts owed that it

10

lists.  Although there are inconsistencies between the amounts listed on the

loan calculator and the loan history, the Wixson Affidavit, which details the

differences between the internal accounting procedures shown in the loan

history and the actual accounting described in the loan calculator, provides

sufficient explanation for these differences.  As to Defendant's argument that

the loan calculator is inadmissible as a business record due to its preparation

solely for the purpose of litigation, the Court finds that the document is

admissible as a demonstrative exhibit.  The underlying loan documents provide

the substantive information, and the loan calculator merely compiles that

information.  It may therefore be used in determining damages at summary

judgment.

### 2.    Calculation of Damages

Once Plaintiff "introduced the Note and established a prima facie right to

judgment on the Note, the burden shifted to [Defendant] to produce evidence

showing a different amount owed and thereby creating a jury issue."

Hovendick v. Presidential Fin. Corp., 497 S.E.2d 269, 272–73 (Ga. Ct. App.

1998).  While Defendant argues that Plaintiff's evidence is insufficient to prove

damages, he offers no evidence that Plaintiff's calculations are incorrect or

should be performed another way.  "That argument, without more, is not enough to defeat summary judgment under Rule 56."  First Citizens Bank & Tr. Co. v. River Walk Farm, L.P., 620 F. App'x 811, 815 (11th Cir. 2015) (holding that defendant's argument that plaintiff's affidavit was insufficient to prove the amount owed insufficient to defeat summary judgment).  Defendant has failed to produce any evidence from which a jury could conclude that Plaintiff's damages calculation is incorrect.  Plaintiff's calculation of the amounts owed, as detailed below, will therefore be awarded against Defendant.

Plaintiff is entitled to recover the outstanding principal balance of $221,633.78.  At the point in which Defendant stopped making payments, the unpaid balance was $1,521,633.78.  (Aff., Dkt. [24-2] ¶ 29.vii, at 39; Aff., Ex. H, Dkt. [24-2], at 86.)  Plaintiff foreclosed on the Property on December 6, 2011, in the amount of $1,300,000.00.  (Aff., Dkt. [24-2] ¶¶ 20–23, at 34–35.) Applying the foreclosure proceeds to the principal balance[1], Defendant still owes $221,633.78.

---

[1] Although the loan history shows that only $1,040,000.00 of the foreclosure proceeds were applied to the principal balance, this was done for internal accounting purposes only to account for the cost to Plaintiff to carry out the foreclosure sale. (Aff., Dkt. [24-2] ¶ 29.xvi, at 43.)  For calculating actual damages, however, the entire foreclosure proceeds of $1,300,000.00 have been applied to the principal balance.

12

Plaintiff is also entitled to recover $113,405.94 in accrued interest. When the note was placed on non-accrual status on October 31, 2011, accrued interest totaled $17,329.72.  (Id. ¶ 30.i, at 44; Aff., Ex. H, Dkt. [24-2], at 86.) Although Plaintiff no longer recorded the accrual of interest for its internal accounting, interest did continue to accrue.  (Aff., Dkt. [24-2] ¶ 29.xiii, at 41.) On that date, the default interest rate, prime rate plus 5%, went into effect.  (Id. ¶ 30.ii, at 44; Aff., Ex. A, Dkt. [27], at 6.)  Prime rate was 3.25% from this date until December 16, 2015, resulting in a default interest rate of 8.25%.[2]  (Aff., Dkt. [24-2] ¶¶ 29.vi, 30.ii, at 39, 44. ) An additional accrual of $12,204.77 in interest occurred between the non-accrual date and the date of the foreclosure sale.  (Id. ¶¶ 30.iii–30.iv, at 44–45.)   From the date of the foreclosure sale to December 17, 2015, when the prime rate increased, additional interest in the amount of $74,713.67 accrued.  (Id. ¶¶ 30.viii–30.ix, at 45–46.)  The prime rate then increased to 3.5%, resulting in a new default interest rate of 8.5%.  (Id. ¶ 30.x, at 46.) From that date to the date Plaintiff's Motion for Summary

---

[2]  Defendant argues that the Wixson Affidavit is insufficient, on its own, to prove the prime interest rate at the relevant time.  This rate, however, is an internal number set by Plaintiff.  Wixson, as an employee of Plaintiff, is in the best position to have personal knowledge of Plaintiff's own internal rate.

13

Judgment was filed, June 10, 2016, additional interest of $9,157.78 accrued. (Id. ¶¶ 30.xi–30.xii, at 46.)  Therefore, the total accrued interest through June 10, 2016, which Plaintiff is entitled to recover, is $113,405.94.

Plaintiff is also entitled to recover costs and fees totaling $23,558.96. Because Defendant failed to pay property taxes on the Property, Plaintiff paid them on his behalf, which the Security Deed entitled it to do.  (Id. ¶ 31, at 47–48; Aff., Ex. B, Dkt. [27], at 11.) The $20,308.96 paid in taxes is therefore recoverable.  (Aff., Dkt. [24-2] ¶ 31, at 47–48; Aff., Ex. I, Dkt. [24-2], at 105–08.)  Additionally, Plaintiff is entitled to recover the appraisal fee of $3,000.00 and the appraisal review fee of $250.00, both of which were costs of collection required in conjunction with the foreclosure.  (Aff., Dkt. [24-2] ¶ 32, at 48.)

Finally, Plaintiff is entitled to recover additional interest that will accrue between June 10, 2016, the date in which this motion was filed, and the date of judgment.  (Aff., Ex. A, Dkt. [27], at 6 (providing that after default, interest accrues at a rate of prime rate plus 5% until judgment).) Thus, Plaintiff is entitled to recover interest in the amount of $52.330198 per day from June 10, 2016, to February 15, 2017.  (See id. ¶ 30.xi, at 46 (calculating per diem

14

interest).)  This totals to additional interest in the amount of $13,082.55.

Thus, Plaintiff is entitled to recover a total of $371,681.23.

## C.    Attorney's Fees

The Forbearance Agreement states:

> Obligor acknowledges and agrees that Lender has the right to collect statutory attorneys' fees from Obligor under the Loan and Collateral Documents to which Obligor is a party. . . . Lender agrees that if all of the obligations owing to Lender by Obligor are paid on or before the Final Payment Date, and Obligor timely complies with all of the terms and conditions of this Agreement, Lender shall waive its claim to statutory costs and attorneys' fees, and shall recover as attorneys' fees and expenses such fees and expenses as are actually incurred by Lender."

(Aff., Ex. C, Dkt. [27] ¶ 20, at 24.)  Since Defendant did not pay all his

obligations, Plaintiff is entitled to statutory attorneys' fees so long as it

complied with O.C.G.A. § 13-1-11.

Plaintiff was required to send to Defendant, after maturity of the

obligation, notice in writing that it intended to enforce the provisions relative to

payment of principal and interest as well as payment of attorney's fees but that

Defendant has ten days from receipt of the notice to pay both principal and

interest without attorney's fees.  O.C.G.A. § 13-1-11(a)(3).  On November 7,

2011, Plaintiff sent to Defendant an acceleration notice and notice of

foreclosure sale.  (Aff., Ex. E, Dkt. [27], at 31–32.)  This letter informed Defendant that Plaintiff intended to enforce its right to collect statutory attorney's fees but that Defendant could avoid paying them by paying the total principal and interest owed within ten days.  (Id. at 31.)  Defendant contests the sufficiency of this notice for failure to properly identify the indebtedness due for payment.  The Court finds that Plaintiff has substantially complied with the requirements of § 13-1-11(a)(3) and that statutory attorney's fees are therefore recoverable.

While compliance with § 13-1-11(a)(3) is a mandatory condition precedent to the recover of statutory attorney's fees, "Georgia case law requires only substantial compliance . . . ." Best v. CB Decatur Court, LLC, 750 S.E.2d 716, 720 (Ga. Ct. App. 2013) (quoting Core LaVista, LLC, 709 S.E.2d at 343)). "So long as a debtor is informed that he has 10 days from receipt of the notice within which to pay principal and interest without incurring any liability for attorney fees, the legislative intent behind the enactment of O.C.G.A. § 13-1-11(a)(3) has been fulfilled." Id.  The notice must therefore "(1) be in writing, (2) to the party sought to be held on the obligation, (3) after maturity, and . . . inform the debtor (4) that the provisions relative to payment of attorney fees in

16

addition to principal and interest will be enforced, and (5) that the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney fees." <u>Harvey v. Meadows</u>, 626 S.E.2d 92, 95 (Ga. 2006) (internal quotations omitted).

While Defendant does not contest that all five of these elements of substantial compliance were met, he claims that the notice failed to identify the particular indebtedness to which the notice applied.  The notice referred to a "Promissory Note dated March 10, 2011 held by Branch Banking and Trust Company ("Lender") made by J T Morgan to Branch Banking and Trust Company in the original principal amount of $1,643,624.83, as secured by a Georgia Security Deed and Security Agreement from J T Morgan recorded in Deed Book 7799, Page 111, Bibb County."  (Aff., Ex. E, Dkt. [27], at 31.)  The note was in actuality signed on March 11, 2008.  (Aff., Ex. A, Dkt. [27], at 8.)

Defendant is correct that the notice must sufficiently identify the relevant debt, but this notice did so.  Although the date stated was incorrect, the notice properly identified the original principal amount and the record location of the Security Deed securing the debt.  This was sufficient to identify the debt to Defendant.  Additionally, after receiving the letter, "Defendant called

17

Plaintiff's counsel and told him 'that [Defendant] was prepared to keep [the] [P]roperty' along terms previously communicated to Plaintiff directly." (Br. in Opp'n to Pl.'s Mot. for Summ. J., Dkt. [29], at 6.)  This conduct supports the conclusion that Defendant in fact knew which debt was involved.  Notice therefore substantially complied with § 13-1-11(a)(3).

Under § 13-1-11(a)(2), Plaintiff is entitled to attorney's fees that amount to "15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00."  As stated above, Defendant owes $221,633.78 in principal and $126,488.49 in interest.  Thus, Plaintiff is entitled to recover $34,837.23 in attorney's fees.

### Conclusion

In accordance with the foregoing, Plaintiff's Motion for Summary Judgment [24] is **GRANTED**.  Judgment is hereby **ENTERED** against Defendant in the sum of $371,681.23 plus $34,837.23 in attorney's fees.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this 15th day of February, 2017.

18

**RICHARD W. STORY**
United States District Judge